UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) No. 1:14-mc-00090-SEB-MJD |
| FORGE INDUSTRIAL STAFFING INC., | ) |
| Respondent. | ) |

**ORDER ON PLAINTIFF'S APPLICATION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA**

This matter comes before the Court on Plaintiff's motion for enforcement of an administrative subpoena. For the reasons stated below, the Court **DENIES** Plaintiff's motion.

### I. Background

Forge Industrial Staffing ("Respondent") is a staffing agency that provides temporary workers. [Dkt. 14 at 2.] On September 16, 2013, Samara Jenkins filed a charge of sexual harassment and retaliation against Respondent. [Dkt. 2-1.] She alleged that Respondent assigned her to work at a Pep Boys distribution center, and that in May of 2013, a coworker began sexually harassing her. [*Id.*] Jenkins complained to Pep Boys and Respondent, and on June 4, 2013, Respondent informed her that Pep Boys had terminated her assignment. [*Id.*]

The Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") subsequently investigated whether Respondent's conduct violated Title VII of the Civil Rights Act of 1964. [Dkt. 3 at 2.] The EEOC obtained from Respondent a copy of Jenkins's employment application, which contained the following clause:

> WAIVER OF LIMITATIONS PERIODS. In exchange for the Company considering my application for employment, and except as prohibited by law, I agree that I must file any and all claims and/or lawsuits arising out of or pertaining in any way to my application for employment, employment or termination of employment within six (6) months of the event giving rise to the claim and/or lawsuit (unless the applicable statute of limitations is shorter than six (6) months, in which case the shorter period of limitations will apply). I understand that applicable statutes of limitations may be longer than six (6) months. However, I agree to be bound by this shorter six (6) month period of limitations and accordingly WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.

[*Id.*] Plaintiff requested additional information about this clause, but Respondent refused to produce it. [*Id.* at 3.] Plaintiff then served on Respondent a subpoena requiring Respondent to:

1) provide a copy of "each and every version of employment application form which the Respondent has used at any time, for any length of time, at any and all of its offices/places of business, in both paper/hardcopy and electronic/online formats, between January 1, 2012, and May 31, 2014," including all pages of and all revisions to each form;

2) identify any address at which Respondent conducted business between January 1, 2012 and May 31, 2014;

3) identify each individual who signed any release or acknowledgment as part of Respondent's application process at any time between January 1, 2012 and May 31, 2014, including the date of application and office at which the individual applied; and

4) identify and provide copies of the complaints and dismissals of any lawsuits filed against Respondent since January 1, 2012 that were dismissed because the filing party had previously signed an agreement limiting the length of time the individual had to file a lawsuit.

[Dkt 2-5 at 3.] Plaintiff seeks the information "to determine how long, if at all, Respondent has required applicants to waive statutorily protected statutes of limitations." [Dkt. 3 at 10.] Respondent did not comply with the subpoena, and on September 15, 2014, Plaintiff filed an Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced. [Dkt. 1.] The Court issued an order to show cause on September 16, 2014. [Dkt. 6.]

After granting Respondent's request for an extension of time to respond, [Dkt. 13], the Court conducted a hearing on November 20, 2014.

## II. Discussion

This Court has a limited oversight role in subpoena enforcement proceedings. *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002). "As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena." *Id.* (quoting *E.E.O.C. v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir.1987)). The district court, however, "also must consider the burdensomeness of compliance," and may "modify or exclude portions of a subpoena" if the demands are "unduly burdensome or unreasonably broad." *Id.* at 653 (quoting *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir.1980)).

Respondent contends that the Court should not enforce the subpoena because 1) the information the EEOC seeks is not relevant [Dkt. 14 at 4]; and 2) even if the information is relevant, compliance with the subpoena would be unduly burdensome.[1] [*Id.* at 10.]

### A. Relevance of the EEOC's Requests

"The EEOC's investigative authority is not plenary; the EEOC 'is entitled to access only to evidence relevant to the charge under investigation.'" *United A*ir, 287 F.3d at 652 (quoting *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 64 (1984)); *see also* 42 U.S.C. § 2000e-8(a) ("In connection with any investigation of a charge filed under section 2000e-5 of this title, the

---

[1] Respondent additionally argues that the Court should reject the EEOC's application for enforcement because Respondent's allegedly illegal practice—contractually shortening the statute of limitations for complaints of employment-based discrimination—is lawful. [Dkt. 14 at 8-9 (citing *Taylor v. Western & Southern Life Ins. Co.*, 996 F.2d 1188, 1204 (7th Cir. 1992).] Case law appears to support this proposition. *See, e.g.*, *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606 (6th Cir. 2013) ("[C]ourts have enforced agreements that shorten an employee's limitations period for claims arising under statutes . . . such as Title VII[.]"). The Court, however, need not address this argument, as the Court agrees with Respondent that its other contentions justify not enforcing the subpoena.

Commission . . . shall at all reasonable times have access to . . . evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation."). "The charge requirement evidences 'Congress' desire to prevent the Commission from exercising unconstrained investigative authority.'" *Id.* (quoting *Shell Oil*, 466 U.S. at 65).

The EEOC bears the burden to establish that information sought is relevant to the charge under investigation, but the "EEOC's burden is not particularly onerous." *Id.* Courts "traditionally have allowed the EEOC access to information 'that might cast light on the allegations against the employer.'" *Id.* (quoting *Shell Oil*, 466 U.S. at 68-69). This definition of relevancy is broader than the relevancy contemplated by the Federal Rules of Evidence; instead, it is akin "to the standard found in Federal Rule of Civil Procedure 26, which says that '[r]elevant information [for civil discovery purposes] need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *E.E.O.C. v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(1)).

Nevertheless, "the Supreme Court also has cautioned that the charge and relevance requirements should not be interpreted so broadly as to render the statutory language a 'nullity.'" *United Air*, 287 F.3d at 653 (quoting *Shell Oil*, 466 U.S. at 69). The relevance requirement is designed to "prevent fishing expeditions," and the EEOC must have "a realistic expectation rather than an idle hope that something may be discovered." *Id.* (citations and quotations omitted). If the EEOC fails to meet its burden, a court cannot enforce the subpoena. *Id.*

The complainant in this case alleges that a co-worker at Pep Boys sexually harassed her and that Respondent retaliated by terminating her employment in response to her complaint.

4

[Dkt. 2-1.] The complainant does not allege that Respondent has a pattern or practice of such discrimination, nor does she allege that the above-referenced limitations clause impaired her ability to file her complaint or impacted her employment in any way. [*See id.*]

Furthermore, the alleged harassment occurred in May 2013, and the complainant filed her charge four months later, in September 2013. [*Id.*] Respondent therefore has not asserted the six-month limitations clause as a defense to the charge, [Dkt. 14 at 6], and acknowledges that asserting the defense would be "temporally impossible." [Show Cause Hearing, November 20, 2014, at 4:15.] Nonetheless, the EEOC's subpoena in this case "seeks documents . . . to determine how long, if at all, Respondent has required applicants to waive statutorily protected statutes of limitations." [Dkt. 3 at 10.]

At the hearing, Respondent argued that the request for information about the waiver was relevant to the complainant's charge because it related to the "overall conditions in the workplace," in that Respondent is allegedly "doing what they can to discourage employees from filing claims." [Hr'g at 4:10].

This argument is unavailing. First, Respondent notes that the clause had no impact on the complainant's willingness to file a charge in this case, as the complainant timely filed her charge well within the six-month period of limitations in the claim. [Hr'g at 4:15.] This makes it difficult to contend that the waiver is "relevant *to the charge under investigation*." 42 U.S.C. § 2000e-8(a) (emphasis added). Second, accepting this argument would eviscerate the meaning of "relevance." If anything relating to the "overall conditions in the workplace" is relevant, then *any* information about the employer is relevant, and any distinction between relevant and irrelevant information disintegrates. That renders relevance a "nullity," and this the Court cannot accept. *United Air*, 287 F.3d at 653 (quoting *Shell Oil*, 466 U.S. at 69) ("[T]he charge and

relevance requirements should not be interpreted so broadly as to render the statutory language a 'nullity.'").

Perhaps recognizing the weakness of this argument, the EEOC also contends that it has a broader mandate to promote the public interest by combating all discrimination in the workplace. [*See* Hr'g at 4:16.] The EEOC's opening brief argues that if "an investigation discloses an unalleged violation, the EEOC is not required to obtain a new charge from the aggrieved individual or to issue a Commissioner's charge," such that the EEOC can immediately subpoena information related to the unalleged violation. [Dkt. 3 at 9.] Plaintiff's reply brief reiterates this argument, and contends that the EEOC "is authorized to subpoena evidence regarding employment practices not specifically mentioned in the charge." [Dkt. 15 at 2.]

The Court observes numerous problems with this argument. At the outset, the EEOC's contentions contradict the plain text of the statute. The EEOC is authorized to subpoena "evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is *relevant to the charge under investigation*." 42 U.S.C. § 2000e-8(a) (emphasis added). The charge under investigation in this case is an individual complaint of sexual harassment and retaliation. [Dkt 2-1 ("*I* believe that *I* have been discriminated against[.]") (emphasis added).] The charge does not allege any broader pattern or practice of discrimination or implicate the limitations waiver in any way. [*See id.*] The EEOC's request for information about that waiver therefore extends beyond the charge under investigation.

Next, the EEOC supports its argument with non-binding authority. Both the EEOC's opening brief and reply cite *E.E.O.C. v. Astra USA, Inc.*, in which the First Circuit stated that an initial charge "is capable of supporting an EEOC investigation into both the discrimination

described in the charge itself and into the surrounding circumstances (including a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation)." 94 F.3d 738, 746 (1st Cir. 1996). The First Circuit drew support for this proposition from a case in which the Fourth Circuit stated that the EEOC can investigate practices other than those in the original charge so "long as the new discrimination arises out of the reasonable investigation of the charge filed." *E.E.O.C. v. Gen. Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976).

Neither of these cases is especially convincing, as other circuits have taken the opposite view. In *E.E.O.C. v. Southern Farm Bureau Casualty Insurance Co.*, the Fifth Circuit considered an EEOC investigation arising from a complaint that "specified racial discrimination only." 271 F.3d 209, 211 (5th Cir. 2001). The EEOC later sought information related to sex discrimination, and the Fifth Circuit upheld the district court's decision not to enforce a subpoena demanding this information:

> When the EEOC discovered what it considered to be possible evidence of sex discrimination by Southern Farm, the EEOC could have exercised its authority under 42 U.S.C. §§ 2000e–5(b), 2000e–6(e) to file a commissioner's charge alleging sex discrimination, thereby freeing the EEOC to demand information relevant to Southern Farm's employment of women. Instead, nineteen months into its investigation of Thomas's racial discrimination charge, the EEOC simply began requesting information about the sex of Southern Farm's employees. Given this timing, together with the availability of a statutory avenue for pursuing other discrimination charges and the EEOC's inability to demonstrate relevance in this case, we perceive no clear error in the district court's determination.

*Id.* at 211-12. The Third Circuit has come to a similar conclusion: In *E.E.O.C. v. Kronos*, the court considered a white female's complaint of disability discrimination. 620 F.3d 287, 301 (3d Cir. 2010). The court then cited the Fifth Circuit's *Southern Farm* decision and rebuffed the EEOC's attempt to expand the investigation to include race discrimination: "While the EEOC is not required to ignore facts it uncovers in the course of a reasonable investigation of the charging

7

party's complaint, that standard does not justify the expansion of the investigation undertaken here." *Id.* Indeed, the Court also cited the Seventh Circuit's *United Air* decision for the proposition that the EEOC could not conduct a "fishing expedition" to wander into unrelated areas of discrimination. *See id.* (quoting *United Air*, 287 F.3d at 653).

The Eleventh Circuit has had the most recent word on this issue. In *E.E.O.C. v. Royal Caribbean Cruises, Ltd.*, the court upheld a district court's denial of enforcement of a subpoena. No. 13-13519, 2014 WL 5756126, at *3 (11th Cir. Nov. 6, 2014). The initial complaint alleged that Royal Caribbean discriminated against Jose Morabito in violation of the Americans with Disabilities Act, but the EEOC subpoenaed company-wide application, hiring, and termination data. The Eleventh Circuit affirmed the district court because it doubted that "company-wide data regarding employees and applicants around the world with any medical condition . . . would shed light on Mr. Morabito's individual charge that he was fired because of his [diagnoses.]" *Id.* at *2. The Court also rejected the EEOC's argument that it was entitled to go beyond Mr. Morabito's individual complaint:

> The EEOC focused most of its efforts before the district court, and in its briefs before us, on its argument that the EEOC is entitled to expand the investigation to uncover other potential violations and victims of discrimination on the basis of disability. . . . We do not construe the relevancy standard so broadly. It might be that this information is related to Mr. Morabito's individual charge, but the standard by which the EEOC's subpoena power is governed is "*relevant* to the charge under investigation." 42 U.S.C. § 2000e–8(a) (emphasis added). The relevance that is necessary to support a subpoena for the investigation of an individual charge is relevance to the contested issues that must be decided to resolve that charge, not relevance to issues that may be contested when and if future charges are brought by others. . . . Although eradicating unlawful discrimination and protecting other as-yet undiscovered victims are laudatory goals and within the Commission's broad mandate, the EEOC must still make the necessary showing of relevancy in attempting to enforce its subpoena. We agree with the magistrate judge and the district court that the broad company-wide information sought by the EEOC here has not been demonstrated to be relevant to the only contested issues that remain from those that arose as a result of the individual charge brought by Mr. Morabito.

8

*Id.* at *3. The most recent word from circuits outside the Seventh thus rejects the EEOC's position in this case. It may be that Respondent's waiver is unlawful, *but see supra* note 1, but that waiver goes beyond the issues arising "as a result of the individual charge brought by [Ms. Jenkins.]" *Royal Caribbean*, 2014 WL 5756126, at *3. The EEOC's subpoena in this case thus exceeds its authority.

Even more problematic for Plaintiff is that the Seventh Circuit also disagrees with *Astra USA* and *General Electric*. In *United Air*, the original complaint focused on United Air Lines' failure to make contributions to the French social security system on behalf of American flight attendants. 287 F.3d at 654. The EEOC issued a subpoena, but its request was "not limited to individuals who may be considered similarly situated to [the complainant] either by position (flight attendant) or by location (France)." *Id.* Instead, the subpoena demanded "extensive information with respect to all United employees residing abroad." *Id.* The EEOC argued that it needed this information "to be able to determine whether United's policies have a disparate impact on men and women and whether United's policies discriminate based on national origin." *Id.* at 655. The Seventh Circuit disagreed: "Nothing in the charge suggest[ed] systemic discrimination on the basis of national origin or sex with respect to life, health, disability and leave benefits." *Id.* Thus, allowing the EEOC to conduct such a broad investigation would have required the court "to disregard the Congressional requirement that the investigation be based on the charge." *Id.*

The current situation is analogous. Nothing in Ms. Jenkins's complaint suggests systemic or company-wide discrimination, [*see* Dkt. 2-1], and the EEOC's company-wide demands go far beyond employees who worked in the same position or same location as Ms. Jenkins. This Court,

like the Seventh Circuit, will not "disregard the Congressional requirement that the investigation be based on the charge," and will not enforce the EEOC's subpoena.

Furthermore, the *United Air* court stated that, should "the EEOC discover, in the course of a significantly narrowed inquiry, evidence of a broader pattern of discrimination, it is, of course, free to file a commissioner's charge incorporating those allegations and broaden its investigation accordingly. Without a broader charge, however, the EEOC's current request cannot be sanctioned." 287 F.3d at 655 (citing *S. Farm Bureau*, 271 F.3d at 211). The Seventh Circuit thus agrees with the position articulated above by the Third, Fifth, and Eleventh Circuits, such that the EEOC in this case must file a broader charge before investigating alleged discrimination unrelated to the complainant's original charge.[2]

The EEOC attempts to save its position with *E.E.O.C. v. Konica Minolta Business. Solutions U.S.A., Inc.*, 639 F.3d 366 (7th Cir. 2011), which it cites for the proposition that when "investigating a charge of discrimination, the Commission is authorized to subpoena evidence regarding employment practices not specifically mentioned in the charge." [Dkt. 15 at 2 (citing *Konica Minolta*, 639 F.3d at 369).]

In *Konica Minolta*, the Seventh Circuit considered an EEOC subpoena issued in response to a complaint in which Elliot Thompson alleged both a "specific instance" of race discrimination and "a pattern of race discrimination." 639 F.3d at 369. The Seventh Circuit wrote:

---

[2] The EEOC's opening brief acknowledges this contrary Seventh Circuit authority, but does so with a passing reference to *United Air* at the end of a page-long string cite. [Dkt. 3 at 9-10.] The rest of the brief ignores it. [*See* Dkt. 3.] In reply, the EEOC attempts to distinguish the current case from *United Air* and vaguely argues that the information it seeks here is "properly tailored to matters within the Commission's authority." [Dkt. 15 at 3.] In *United Air*, however, the Seventh Circuit found that "accepting the EEOC's interpretation of relevance in this case would render that requirement a 'nullity.'" 287 F.3d at 654. The Court in the current case, as described above, has come to the same conclusion, and thus finds that the Seventh Circuit's requirement that the EEOC initiate a new charge before obtaining the information it seeks is directly on point.

10

> When the EEOC investigates a charge of race discrimination for purposes of Title VII, it is authorized to consider whether the overall conditions in a workplace support the complaining employee's allegations. Racial discrimination is "by definition class discrimination," and information concerning whether an employer discriminated against other members of the same class for the purposes of hiring or job classification may cast light on whether an individual person suffered discrimination.

*Id. Konica Minolta* thus establishes that the EEOC is empowered to investigate whether the employer "discriminated against other members of the same class" as the original complainant. *Id.* As an example, when an employer is alleged to discriminate on the basis of race against an individual African American, *Konica Minolta* suggests that the EEOC may then investigate *discrimination on the basis of race against African Americans* within the entire company. *Konica Minolta* does *not* suggest that the EEOC may immediately demand information about other potentially illegal employment practices in which the company might be engaged.

The Seventh Circuit confirmed this interpretation in writing that the question "under *Shell Oil* and its progeny is not whether Thompson specifically alleged discrimination in hiring, but instead is whether information regarding Konica's hiring practices will 'cast light' *on Thompson's race discrimination complaint*." *Id.* (emphasis added). The EEOC's broader investigation thus must still be tied to the original complaint.

In the current case, the EEOC has not established a link between its subpoena and the original complaint. The complainant has not alleged a pattern or practice of discrimination, nor has she alleged the sort of racial discrimination that might, by definition, be class-wide. [*See* Dkt. 2-1; *Konica Minolta*, 639 F.3d at 369.] The complainant's allegations, in fact, are entirely unrelated to the employment application's waiver, leaving *no* prospect that information about the waiver and other employees will "cast light" on whether the individual complainant suffered from the discrimination she alleges.

The EEOC, in short, does *not* seek to investigate whether Respondent "discriminated against other members of the same class" as the complainant. *Konica Minolta*, 639 F.3d at 369. Instead, it seeks to launch an unrelated investigation into a new and unrelated class of employees—those whose claims may have been affected by signing the waiver. *Konica Minolta* does not support such a broad investigation. The Court will therefore adhere to the Seventh Circuit's statement in *United Air* and will not enforce the subpoena in the absence of a "broader charge" against Respondent. *United Air*, 287 F.3d at 655.

### B. Burden of Compliance

A district court may also modify or decline to enforce a subpoena where compliance would be unduly burdensome. *Id.* at 653. The employer must establish that the demands are burdensome, and conclusory allegations of burden are insufficient. *Id.* The Seventh Circuit has stated that the employer carries a "difficult burden" of showing that "compliance would threaten the normal operation of a respondent's business." *Id.* (quoting *E.E.O.C. v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981)). However, "that scenario is more illustrative than categorical. 'What is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question.'" *Id.* (*quoting Shaffner*, 626 F.2d at 38). This Court must therefore "weigh the likely relevance of the requested material to the investigation against the burden to [the respondent] of producing the material." *Id.* at 654 (quoting *E.E.O.C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)).

As described above, the Court finds that the EEOC's subpoena demands information that is not at all relevant to the "charge under investigation." 42 U.S.C. § 2000e-8(a). However, even if the Court accepted the EEOC's strained argument that the waiver information relates to complainant's claim because it sheds light on the "overall conditions in the workplace," the

Court would not enforce the subpoena. This is because the burden imposed on Respondent far exceeds the minimal relevance that the waiver's potential implications for the "overall conditions in the workplace" might have for the complainant's charge.

Respondent in this case discussed at length the burden that compliance with the subpoena would impose, [Dkt. 14 at 11-12], and submitted evidence supporting its assertions in the form of an affidavit from its Director of Human Resources. [Dkt. 14-1.] In particular, Respondent explained that, during the time period covered by the EEOC subpoena, Respondent processed 130,000 temporary employee applications and that these applications are "not kept in a central repository, nor electronically in any form." [*Id.* ¶¶ 11-12]. Compliance with the subpoena would thus require Respondent to "manually review each employment application maintained in paper format at each of its office locations," at an estimated time of "2,166 hours."[3] [*Id.* ¶¶ 15-16.] Respondent would also need time to find and produce information responsive to Plaintiff's demand for data on lawsuits that had been dismissed as a result of the limitations waiver. [Dkt. 14 at 11.] Respondent does not store such data electronically or in any sort of central repository, such that it would again need to manually collect and produce the information. [*Id.* at 11-12.]

In reply, the EEOC suggests that Respondent has not established how the above described burden "would threaten its normal business operations." [Dkt. 15 at 5.] Respondent, however, explained that it "employs a small administrative staff of approximately 8-10 employees" at each of its ten locations. [Dkt. 14-1 ¶¶ 4, 6.] It is a "leanly staffed operation" that has a Director of Human Resources, but no Human Resources Department. [Hr'g at 4:19.] Compliance with the subpoena would thus require Respondent to divert its employees from their

---

[3] Respondent's Director of Human Resources estimated that it would require one minute to "gather, review and compile the information requested in Paragraph 3 of the Subpoena" for each of Respondent's 130,000 applications. [Dkt. 14-2 ¶ 16.]

regular tasks, [*see* Dkt. 14-1 ¶¶ 7-10], and thereby disrupt Respondent's day-to-day operations. This is the very definition of undue burden. *See, e.g.*, *Bay Shipbuilding Corp.*, 668 F.2d at 313 (requiring employer to show that compliance with subpoena would "threaten the normal operation of a respondent's business").[4]

The Court thus finds that Respondent has shown that compliance with the subpoena would be unduly burdensome. The relevance of the information the EEOC seeks is generously described as tangential to the underlying charge, and Respondent's evidence establishes that compliance would significantly interfere with its staff members' daily activities. Weighing these factors against each other in compliance with *United Air*, *see* 287 F.3d at 653, the Court concludes that enforcement of the subpoena is not justified.

### III. Conclusion

For the reasons stated above, the Court **DENIES** Plaintiff's motion for enforcement of the administrative subpoena issued to Respondent. [Dkt. 1.] The Court's Order to Show Cause, [Dkt. 6], is hereby discharged.

Dated: 11/24/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[4] Plaintiff also notes that Respondent "has not provided any dollar estimate regarding the cost of compliance." [Dkt. 15 at 5.] This is not fatal to Respondent's argument. *See, e.g.*, *E.E.O.C. v. ABM Janitorial-Midwest, Inc.*, 671 F. Supp. 2d 999, 1006 (N.D. Ill. 2009) (sustaining burdensomeness objection without identifying monetary cost of compliance). In any case, the Court may easily infer the cost of compliance: Respondent assigns its temporary employees to positions where they earn $9.00 to $10.00 per hour. [Dkt 14-2 ¶¶ 18-19.] Thus, if Respondent decided to try to avoid the subpoena's disruption of its own employees' daily operations, it would incur at least $20,000 dollars in costs—hardly insignificant for a "leanly staffed" operation that does not even have a Human Resources Department.

Distribution:

Jo Ann Farnsworth
EEOC
joann.farnsworth@eeoc.gov

Michelle Eisele
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
michelle.eisele@eeoc.gov

William F. Dugan
SEYFARTH SHAW
wdugan@seyfarth.com

Uma Chandrasekaran
SEYFARTH SHAW LLP
uchandrasekaran@seyfarth.com